

# IN THE
# TENTH COURT OF APPEALS

### No. 10-23-00414-CR

**NICHOLAS DOMNIC BOLLIN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 85th District Court
### Brazos County, Texas
### Trial Court No. 23-00303-CRF-85

## MEMORANDUM OPINION

Nicholas Domnic Bollin was convicted of four counts of Credit or Debit Card Abuse and sentenced to 24 months in a State Jail Facility on each count.  Because the trial court did not abuse its discretion in permitting Bollin to waive his right to counsel and proceed as his own counsel, the trial court's judgment is affirmed.

**BACKGROUND**

Eight months prior to trial, the trial court, *sua sponte*, ordered a psychiatric examination of Bollin because there was "some evidence" before the court indicating a

need to evaluate Bollin's competency to stand trial. *See* TEX. CODE CRIM. PROC. art. 46B.004. Bollin would not attend the evaluation; consequently, the psychologist reviewed a court transcript, detention center incident reports and medical records, the indictment, and the order for the evaluation. She also spoke to jail staff who reported they had not seen a need for mental health services for Bollin.

Bollin is a self-described "American State National." The psychologist explained in her evaluation that:

> "[American State National] is a term commonly used by Sovereign Citizens to identify themselves as individuals who do not believe they are citizens of what they perceive as an illegitimate government. [Bollin] posed several questions that are consistent with his identity, including: 'Are you operating under the color of law;' 'Are you a foreign agent;' 'Is this the court of record;' and 'How do you want me to pay SF273, 17th Amendment, Gold or Silver?'"

After evaluating all she had before her, the psychologist determined Bollin was competent to stand trial.[1] At a status hearing, the trial court accepted that determination and proceeded "like that's the case."

During the status hearing, Bollin refused to "accept" previously appointed counsel and asserted he was representing himself. The trial court proceeded to warn Bollin of the dangers and disadvantages in representing himself, and Bollin answered these warnings with, "I'm good," "I know this," and "I do [understand this]." When asked if he would sign a form with the warnings on it, Bollin responded, "I can represent myself without signing anything," and "I'm not going to sign anything."

---

[1] Bollin does not challenge this determination.

The trial court then read the warning form to Bollin. When the court inquired as to his background information, Bollin responded, "Doesn't matter." When asked if he did not want to answer the question, Bollin responded, "I don't have to." The trial court then stated, "you're not giving me much information on your background or your experience related to any legal experience that you have --." Bollin interrupted and again stated, "I don't have to."

Bollin then stated, "I have my own lawful counsel." The trial court clarified, "When you say you have your own lawful counsel, you understand that's you?" Bollin replied, "Yes." When the court read from the form that Bollin had appointed counsel, Bollin again rejected appointed counsel, saying, "I do not accept her." The trial court finished reading the form and asked again if Bollin wanted to represent himself. Bollin replied that he was representing himself as "sui juris." The trial court ultimately signed the waiver form and released the court-appointed attorney.

Six months later and just prior to jury selection, the trial court sought to confirm that Bollin still wanted to represent himself. After giving Bollin a chance to speak his mind, which he did, Bollin, thereafter, refused to speak. Thus, the trial court presumed that, by his failure to respond, Bollin had not changed his mind regarding self-representation. The trial court read a new warning form to Bollin and signed it. Bollin did not respond to any questions asked of him during and after the reading and would not sign the form. As a precaution, however, the trial court appointed stand-by counsel for Bollin if needed.

Throughout the trial, Bollin remained silent. He did not conduct voir dire or make

any peremptory strikes or challenges for cause. He did not make an opening statement. He neither cross-examined the State's witnesses, nor called any of his own witnesses. He did not participate in the charge conference and did not make any closing remarks. Although present, he also did not participate in the punishment phase of the trial. Further, he did not request the assistance of his standby counsel.

In one issue on appeal,[2] Bollin asserts the trial court abused its discretion in permitting Bollin to represent himself at trial. Specifically, Bollin argues that 1) he was not competent to waive counsel and 2) his waiver of counsel was not intentionally or knowingly made.

## RIGHT TO SELF-REPRESENTATION

Every criminal defendant has a constitutional right to the assistance of counsel and the constitutional right to self-representation. U.S CONST. amend. VI; TEX. CONST. art. I § 10; *Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *Osorio-Lopez v. State*, 663 S.W.3d 750, 756 (Tex. Crim. App. 2022). A defendant's constitutional right to self-representation, however, is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 178, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008). To be constitutionally effective, a decision to waive the right to counsel must be made (1) competently, (2) knowingly and intelligently, and (3) voluntarily.[3] *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999). Further, a defendant must be competent *before* he can knowingly and intelligently

---

[2] The trial court appointed appellate counsel for Bollin as instructed by this Court.

[3] Bollin does not challenge the voluntariness of his waiver.

waive his right to counsel and represent himself. *Osorio-Lopez*, 663 S.W.3d at 757. *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993).

The parties agree that, pursuant to *Indiana v. Edwards* and *Chadwick v. State*, we review the trial court's decision to permit self-representation for an abuse of discretion. *See Indiana v. Edwards*, 554 U.S. 164, 177, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008); *Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). Thus, we will review the trial court's decision in this case accordingly, viewing the evidence in the light most favorable to the trial judge's ruling and implying any findings supported by the evidence and necessary to support the trial judge's ruling. *See Chadwick*, 309 S.W.3d at 561.

### Competent

Although there is a "heightened" standard for waiving the right to counsel, that being, the waiver must be knowing and intelligent, there is not a heightened standard of competence. *See Godinez v. Moran*, 509 U.S. 389, 400-401, 113 S. Ct. 2680, 125 L. Ed. 2d 321(1993). The standard for competency to waive the right to counsel is the same as the competency to stand trial standard. *Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022). States may adopt a higher standard, but they are not required to do so. *Id*. (citing *Edwards*, 554 U.S. at 178); *see Godinez*, 509 U.S. at 402 ("while States are free to adopt competency standards that are more elaborate…, the Due Process Clause does not impose these additional requirements."). Texas has not adopted a higher standard. *Osorio-Lopez*, 663 S.W.3d at 757.

Bollin uses the standard expressed in *Edwards*, 554 U.S. at 178—that even when a defendant is competent to stand trial, a trial court may nonetheless insist that the

defendant be represented by counsel if the defendant is suffering from a severe mental illness and is unable to conduct trial proceedings by himself—to support his proposition that he was not competent to waive his right to counsel. *Edwards* has no direct application to this case because the trial court here never insisted, over Bollin's objection, that Bollin be represented by counsel.

Further, in *Edwards*, the Supreme Court held that the Constitution permits States to insist upon representation by counsel for the subset of criminal defendants who are competent to stand trial but are nevertheless unable to proceed *pro se* due to a severe mental illness. *Fletcher v. State*, 474 S.W.3d 389, 400 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). There is nothing in this record to suggest that Bollin had a severe mental illness at the time he waived his right to counsel. The psychologist had determined Bollin was competent to stand trial, which Bollin does not contest, and his refusal to cooperate with the evaluation and his repetitive questions and statements to the trial court were the product of his cultural identification as an American State National. Many of the questions complained about now by Bollin which were posed to the trial court at the status hearing, such as, "Are you operating under the color of law," "Are you a foreign agent," "Is this a court of record," and "How do you want me to pay SF273, 17th Amendment, Gold or Silver?" were considered by the psychologist to be consistent with and a common tactic of the American State National identity. She did not say that these were signs of a severe mental illness.

Bollin's behavior before jury selection and during the trial was only slightly different than his behavior during the status hearing. After the trial court permitted

Bollin to speak his mind about various topics, Bollin never said anything again. The trial court could have determined that Bollin's refusal to speak was the exercise of the right to remain silent which Bollin had previously recognized when he told the court he did not have to say anything about his background.[4] The trial court could also have determined that Bollin's responses both at the status hearing and prior to jury selection were not a sign of mental illness but rather, they were a rhetoric from his cultural identity. *See e.g. MacDonald v. State*, No. 09-21-00390-CR, 2023 Tex. App. LEXIS 7747, at *20 (Tex. App.— Beaumont Oct. 11, 2023, no pet.) (not designated for publication) ("While the record reflects that MacDonald expressed beliefs that he was an 'American National,' a member of the 'American National Union,' claiming that the United States was not a country, that he was not subject to the laws,… these do not constitute evidence of incompetence."). Further, once Bollin was determined to be competent to stand trial, the trial court was not constitutionally required to conduct any further inquiry regarding Bollin's competence. *Fletcher v. State*, 474 S.W.3d 389, 401 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Accordingly, the trial court did not abuse its discretion in impliedly determining Bollin was competent to waive his right to counsel.

### Knowing and Intelligent Waiver

The decision to waive counsel and proceed *pro se* is made "knowingly and intelligently" if it is made with a full understanding of the right to counsel. *Collier v. State*, 959 S.W.2d 621, 626 (Tex. Crim. App. 1997). The purpose of the "knowing and intelligent"

---

[4] At punishment, Bollin specifically told the court he had a right to remain silent when the court asked if he wanted to testify.

inquiry is to determine whether the defendant understands the significance and consequences of a particular decision. *See Godinez v. Moran*, 509 U.S. 389, 401 n.12, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). When a defendant chooses to waive his right to counsel and represent himself, he should be warned of the dangers and disadvantages associated with such waiver so that the record will establish the defendant knows what he is doing and his choice is made with open eyes. *Osorio-Lopez v. State*, 663 S.W.3d 750, 756 (Tex. Crim. App. 2022); *Hatten v. State*, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). The record must reflect that the trial court thoroughly admonished the defendant, but "no 'formulaic questioning' or particular 'script' is required to assure the court that a defendant who has asserted his right to self-representation does so with eyes open." *Osorio-Lopez*, 663 S.W.3d at 757 (quoting *Burgess v. State*, 816 S.W.2d 424, 428 (Tex. Crim. App. 1991)); *Collier v. State*, 959 S.W.2d 621, 626 n.8 (Tex. Crim. App. 1997). Further, a defendant need not, himself, have the skill and experience of a lawyer to intelligently choose self-representation. *See Faretta* v. *California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

Here, Bollin was twice warned of the dangers and disadvantages of self-representation, and the form waiver was also read to him twice. Nothing in the record suggests Bollin did not understand the significance or consequences of that decision, especially in light of his answers to the trial court's questions at the status hearing. Thus, the trial court did not abuse its discretion in impliedly finding that Bollin's waiver was made knowingly and intelligently.

**CONCLUSION**

Because the trial court did not abuse its discretion, Bollin's sole issue is overruled,

and the trial court's judgment is affirmed.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Smith
Affirmed
Opinion delivered and filed September 12, 2024
Do not publish
[CR25]

